Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

| United States District Court | |
|---|---|
| Southern District of New York | 7:20-cv-08677 |
| Sandi Turnipseed, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Simply Orange Juice Company, | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Simply Orange Juice Company ("defendant") manufactures, distributes, markets, labels and sells vanilla almondmilk purporting to be flavored only with vanilla from vanilla beans under its "Simply" brand ("Product").

2.  The Product is available to consumers from retail and online stores of third-parties and is sold in sizes including 46 OZ.

3.  The relevant front label representations include "Vanilla," "Simply Almond," "Vanilla Almondmilk," "All Natural" and a picture of a cured vanilla bean and the vanilla flower.



4.      The representations as "Vanilla" are false, deceptive and misleading because the Product contains fake vanilla, not disclosed to consumers where they are expecting to see it on the front label.

5.      Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

6.      The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material

for true vanilla flavorings.

7. The vanilla bean is not consumed by itself – it is heated in the sun for weeks until it is placed in alcohol, where its flavor constituents are extracted in the solution (vanilla extract).

8. Vanilla's unique flavor cannot be duplicated by science because it contains over 200 compounds, including volatile constituents such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

9. These compounds are shown in the table below, from a sample of vanilla extract.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
|  | 78413588 | Total | 100.0000 |

10. While vanillin is the most abundant (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

11. Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415) provide cinnamon and creamy flavor notes to vanilla.

12. Other compounds present in relatively significant amounts include acetovanillone, cinnamyl alcohol, guiaicol, p-cresol, p-hydroxybenzoic acid (MS Scan # 832, 0.2867), vanillic acid (MS Scan # 892, 1.2120) and vanillyl ethyl ether.

13. Consumers want the vanilla in vanilla flavored products to come from a real source, i.e., from vanilla beans from the vanilla plant, instead of artificial vanilla flavorings.

14. From the time vanillin in the 19th century was first isolated, companies have adulterated their vanilla products with cheap synthetics and substitutes such as vanillin – a substance manufactured in factories from synthetic, non-vanilla bean sources.

15. The first efforts to prevent fraud in vanilla products were in the late 19th century by the U.S. Pharmacopeia which required a specific weight of vanilla beans as the source for vanilla extract.

16. The focus was on the weight of actual vanilla beans, because the main compound of vanillin was easily used to boost the flavor of a small amount of real vanilla.

17. During this time, government entities would often seize products which were labeled as "vanilla" but were comprised of "coumarin, vanillin, and caramel."[1]

18. Consumers are entitled to know "whether the product [they are buying] is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's

---

[1] Notice of Judgment, Feb. 10, 1914, 2794. Adulteration of vanilla extract. U. S. v. One Barrel Vanilla. Decree of condemnation by default. Product ordered sold.

4

vanilla flavor is provided by flavorings not derived from vanilla beans."[2]

19. Congress directed the Food and Drug Administration ("FDA") to establish standards and rules to combat the marketing of foods from which traditional constituents were removed and new or different (often cheaper and artificial) ingredients were substituted.

20. Vanilla products with minimal flavoring from vanilla beans, boosted by synthetic vanillin, are a prime example.

21. Regulations for vanilla apply to individual vanilla flavorings sold for use in baking and cooking and to products which designate their main or characterizing flavor as vanilla.

22. These regulations established custom and practice so that consumers could know if a vanilla flavored food is flavored from vanilla beans or vanillin because it would say "Artificially Flavored."

23. In response to a vanilla shortage and spike in fake vanilla usage, the flavor industry urged companies to truthfully disclose the presence of synthetic vanilla to consumers. *See* John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").[3]

24. The article's conclusions were consistent with consumer surveys indicating consumers understand the unqualified representation of "vanilla" to refer to only vanilla flavor from vanilla beans and not from vanillin.

25. The Product's representations as "Vanilla" are misleading because it contains added vanillin, which provides almost all of its vanilla taste.

---

[2] Id.
[3] Hallagan and Drake, "There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations."

26. Consumers will not feel they need to maneuver the Product to double check the ingredient list because the lack of any qualifying terms, i.e., "flavored," or "natural flavors," on the front label tells them the flavor is only from the characterizing ingredient of vanilla beans.

27. Nevertheless, reviewing the ingredient list will not reveal the deception, because it lists "Natural Flavors" and "Vanilla Extract," but does not disclose added vanillin which provides almost all of the vanilla taste.

> **INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), CANE SUGAR, ==NATURAL FLAVORS==, SEA SALT, ==VANILLA EXTRACT==.

28. Though the Product contains *some* vanilla extract, this is less than the amount of "Natural Flavors."

29. Though vanillin shares the same molecular structure whether from vanilla beans or synthetic sources, the Product's abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation, such as p-hydroxybenzoic acid and vanillic acid, is indicative of added vanillin.

30. Additionally, the "Natural Flavors" contain maltol and/or piperonal, based on a completed or projected analysis of the Product's flavoring.

31. The amount of real vanilla in the Product is less than consumers expect based on the unqualified front label statement of "Vanilla" with pictures of vanilla.

32. The representations of "Vanilla" and images of vanilla are misleading because they give consumers the impression all of the flavoring is from the ingredient of vanilla beans.

33. The use of vanillin in a food characterized as vanilla requires the front label to state "artificially flavored." FDA Letter to Richard Brownell, February 25, 2016.

34. Because the Product is characterized as "vanilla" and "contain[s] vanillin derived from a non vanilla bean source," it should be labeled as "artificially flavored." FDA Letter,

Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016; *see* 21 C.F.R.101.22(i)(2); *see also* Labeling Vanilla at 40, 46 (the regulations "at 21 CFR Section 101.22, apply to all foods except" vanilla because "vanilla flavorings do[es] not provide for the designation of any vanilla flavorings as 'vanilla with other natural flavors' or 'vanilla WONF.'")

35. The front label ignores all relevant flavor labeling requirements, so consumers will not know the Product is flavored mainly by fake vanilla.

36. By omitting "artificially flavored" from the front label, consumers are not told that the Product's vanilla taste is predominantly from artificial vanilla.

37. The front label statement of "All Natural" coupled with the "Natural Flavors" on the ingredient list reinforces this conclusion and leads consumers to believe all of the flavors are natural vanilla flavors, when this is not true.

38. Plaintiff reasonably believed that the "vanilla" representations meant that the Product did not contain added vanillin, because this information is required to be disclosed, *viz*, by stating "artificially flavored" and had more vanilla than it did.

39. Defendant knows consumers will pay more for the Product because the front label only states "vanilla" and not "artificially flavored."

40. Defendant's omission and failure to disclose the artificial vanilla flavor on the front label is deceptive and misleading to consumers.

41. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

42. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

43. The value of the Product that plaintiff purchased and consumed was materially less

than its value as represented by defendant.

44. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

45. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $3.99 per 46 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

46. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

47. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

48. Plaintiff Sandi Turnipseed is a citizen of New York.

49. Defendant Simply Orange Juice Company is a Florida corporation with a principal place of business in Atlanta, Fulton County, Georgia and is a citizen of Georgia.

50. "Minimal diversity" exists because plaintiff Sandi Turnipseed and defendant are citizens of different states.

51. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

52. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase

8

the Product and the misleading representations and/or their recognition as such.

53. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

### Parties

54. Plaintiff Sandi Turnipseed is a citizen of New York, Washingtonville, Orange County.

55. Defendant Simply Orange Juice Company is a Florida corporation with a principal place of business in Atlanta, Georgia, Fulton County and is a citizen of Georgia.

56. Defendant sells beverages from fruits, vegetables and nuts under the "Simply" brand.

57. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

58. Plaintiff Sandi Turnipseed purchased the Product on at least one occasion during late September or early October 2020, at stores including ShopRite, 384 Windsor Hwy New Windsor NY 12553-7988.

59. Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon the front label claims and did not expect its vanilla taste to be provided by artificial vanilla flavors.

60. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

61. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

62. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

63. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so

with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

64. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

65. Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

66. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

67. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

68. Plaintiff is an adequate representatives because her interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

72. Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350
### (Consumer Protection Statute)

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product

type.

75. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

76. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

77. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla because it was not stated on the front label or ingredient list, where consumers are accustomed to looking and seeing this information.

78. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

79. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

82. The amount and proportion of a characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla because it was not stated on the front label or ingredient list, where consumers are accustomed to looking and seeing this information.

83. Defendant had a duty to disclose the non-vanilla, artificial flavors and/or provide non-deceptive marketing of the Product and knew or should have known same were false or

misleading.

84. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

85. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

86. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

87. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

88. Plaintiff incorporates by reference all preceding paragraphs.

89. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

90. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

91. The amount and proportion of a characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla because it was not stated on the front label or ingredient list, where consumers are accustomed to looking and seeing this information.

92. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

93. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

94. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

95. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

96. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

97. Plaintiff incorporates by reference all preceding paragraphs.

98. Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

99. The amount and proportion of a characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect artificial vanilla because it was not stated on the front label or ingredient list, where consumers are accustomed to looking and seeing this information.

100. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

101. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

102. Plaintiff incorporates by reference all preceding paragraphs.

103. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 19, 2020

                                                            Respectfully submitted,

                                                            Sheehan & Associates, P.C.
                                                            /s/Spencer Sheehan
                                                            Spencer Sheehan
                                                            60 Cuttermill Rd Ste 409

Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-08677
United States District Court
Southern District of New York

Sandi Turnipseed, individually and on behalf of all others similarly situated,

                              Plaintiff,

   - against -

Simply Orange Juice Company,

                              Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 19, 2020

                                                                       /s/ Spencer Sheehan
                                                                       Spencer Sheehan