**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Sandi Turnipseed, individually and on behalf of all others similarly situated, | 7:20-cv-08677-NSR |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Simply Orange Juice Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Simply Orange Juice Company ("defendant") manufactures, markets and sells almondmilk labeled as being flavored with extracts from vanilla beans under the "Simply" brand ("Product").

I.   Consumers seek Vanilla because it is a Natural Flavoring Ingredient

2.      Demand for real vanilla has been steadily increasing due to consumer demand for natural flavoring ingredients.[1]

3.      Vanilla is an example of a natural flavor because its flavoring principles are extracted from the vanilla bean fruit pod with only alcohol.

4.      The demand for natural flavors is due in part to aversion of seventy percent of consumers towards artificial flavors, because they contain highly processed synthetic ingredients which are linked to detrimental health effects.[2]

---

[1] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[2] Artificial flavors are made from synthetic sources or through non-natural processes, such as chemical reactions. See 21 C.F.R. § 101.22(a)(1).

5.     All demographics of consumers, from Generation Z to Baby Boomers – say they would pay more for foods with no artificial flavors because they are perceived as more natural.

6.     Vanilla comes from an orchid plant grown in tropical climates.



7.     The vanilla flower produces the vanilla bean, the raw material for vanilla flavorings.



8.     After being picked, vanilla beans are cured and develop their unique flavor.



9.     This flavor is locked inside the vanilla bean in the form of millions of black seeds.



10.     The flavor from these seeds is extracted naturally through alcohol. [3]



11.     Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract and is responsible for roughly one-third of vanilla's flavor and aroma.

---

[3] Jeanine Friesen, Homemade Vanilla Extract, Faithfully Gluten Free, Sept. 18, 2013.

12.     Vanilla's unique flavor is due to hundreds of odor-active compounds besides vanillin, such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

13.     Methyl cinnamate and cinnamyl alcohol provide cinnamon and creamy notes.

14.     Acetovanillone provides a sweet, honey taste.

15.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

16.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

II.  Consumers are Aware that Artificially Flavored Products Disclose this on Front Label

17.     New York State regulations require companies to truthfully disclose the source of a product's flavor. *See* 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.") (incorporating 21 C.F.R. § 101.22, which controls labeling of flavor sources).

18.     Consumers are accustomed to such truthful labeling across food and beverages.

19.     For example, vanilla beverages may have pictures of vanilla beans, but they are truthfully labeled as "Artificially Flavored."



20.   Other types of "vanilla" products, like U-bet Vanilla Syrup and vanilla wafers truthfully tell consumers their vanilla taste is not from extracts from vanilla beans, but artificial vanilla, because they say, "Artificially Flavored."

 

III. Defendant's Representations are Misleading

21.     The Simply Almond "Vanilla" Almondmilk Product is marketed as an alternative to defendant's Original and Unsweetened Original versions.



22.    Defendant markets the Product as being flavored with, and by, extracts of vanilla beans, through the statement, "Vanilla," and the picture of a vanilla bean and vanilla flower.

 

23.    The Product contains almonds in a relatively appreciable amount – shown through the front label representations of "Almond," "Almondmilk," and pictures of three fresh almonds.

24.    Consumers will reasonably expect the Product contains a non-negligible amount of extracts from vanilla beans, shown through the large picture of the vanilla bean and vanilla flower and the statements of "Vanilla."

25.    The Product's name, "Simply," implies its contents are "without ambiguity" – almonds, extracts from vanilla beans and sugar (for the non-unsweetened variety).

26.     These representations – and a general expectation that a food or beverage will truthfully disclose whether it is "Artificially Flavored" – assures consumers that the Simply Vanilla Almondmilk has a non-negligible amount of extracts from vanilla beans.

27.      A non-negligible amount of extract from vanilla beans is an amount sufficient such that a vanilla taste does not need to be boosted by synthetic flavoring.

28.     The Product's ingredient list reveals "NATURAL FLAVORS" and  "VANILLA EXTRACT."

**INGREDIENTS:**     ALMONDMILK     (FILTERED     WATER, ALMONDS), CANE SUGAR, NATURAL FLAVORS, SEA SALT, VANILLA EXTRACT.

29.     However, the amount of vanilla extract is negligible, and most of the Product's "vanilla" taste comes from the "natural flavors" ingredient.

30.     That the "natural flavors" exceeds the amount of extracts from vanilla beans is evident because it appears before vanilla extract, as ingredients are listed in order of predominance by weight.

31.     That the amount of extractives from vanilla beans is negligible is also evident because this ingredient is added in a solution that contains at least thirty-five percent alcohol.

32.    Therefore, the weight of this ingredient will not be proportional to its flavoring constituents.

33.    "Natural Flavors," on the other hand, is typically a highly concentrated ingredient, added without a high level of liquid solution.

34.    That the Product contains more natural flavors than vanilla is an admission that the amount of extracts from vanilla beans is de minimis.

35.    Laboratory testing of the Product in 2020 and/or 2021 sought to isolate key vanilla flavor compounds.

36.    The result was that the amount of vanillin was disproportionately greater than if it was only present due to extracts from the vanilla bean.

37.    The vanillin was unaccompanied by the expected amounts of key compounds from the vanilla plant – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

38.    The conclusion is that the Product contains a negligible amount of extracts from vanilla beans, if any, and its "vanilla" taste is from the flavorings which comprise the "Natural Flavors" ingredient.

39.    The vanillin source is guaiacol, based on its detection at atypically elevated levels, not explained by relation to any other compounds.

40.    Guaiacol, a petrochemical precursor, is the source of 85% of synthetic vanillin and is obtained from synthetic benzene and propylene, whose industrial source is petroleum.

41.    Converting guaiacol to vanillin requires chemical reactions, such as condensation with glyoxylic acid, decarboxylation, chemical catalysts such as sodium hydroxide or sodium chloride and aromatic substitution.

42.    Vanillin from guaiacol is an artificial flavor because it is from an artificial source and made through artificial processes. *See* 21 C.F.R. § 101.22(a)(1).

43.    Defendant is required to identify this flavoring by its specific name, vanillin or "artificial flavor," on the ingredient list.

44.    The Product also contains the artificial flavor of vanillin propylene glycol acetal, a substitute for vanillin derived from guaiacol.[4]

# Vanillin PG acetal

The color, particle size or some other physical p

Request a Sample

## Organoleptic Characteristics
- Creamy
- Sweet

**Natural Status:**
Artificial

45.    The Product contains piperonal (heliotropine), recognized by the FDA as an artificial flavoring, and not found in vanilla. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

46.    The source of the piperonal in the Product is benzene, a byproduct of petroleum processing.

47.    This is inferred because the detection level was several times higher than it would be if a natural source of piperonal were used.

48.    Piperonal contributes a sweet vanilla olfactory note.

49.    The front label is misleading because it only states "vanilla" with pictures of a vanilla

---

[4] http://dir.perfumerflavorist.com/detail/ffmProduct.html?id=32410

bean and vanilla flower, even though the "vanilla" taste is provided by artificial flavoring.

50.    Consumers are misled because the amount of extracts from vanilla is negligible, in an amount it cannot contribute to the Product's vanilla taste.

51.    Unlike truthfully labeled vanilla products, the Product does not state "Artificially Flavored," so consumers can have accurate information. *See* 21 C.F.R. § 101.22(i)(2).

52.    The Product lacks an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

IV. Conclusion

53.    Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product, relative to itself and other comparable products.

54.    Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

55.    Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

56.    Defendant sold more of the Product and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

57.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

58.    Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

59.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.99 per 46 OZ, excluding tax, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

60.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

61.     Plaintiff Sandi Turnipseed is a citizen of New York.

62.     Defendant Simply Orange Juice Company is a Florida corporation with a principal place of business in Atlanta, Fulton County, Georgia.

63.     Diversity exists because plaintiff Sandi Turnipseed and defendant are citizens of different states.

64.     Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

65.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

<u>Parties</u>

66.     Plaintiff Sandi Turnipseed is a citizen of Washingtonville, Orange County, New York.

67.     Defendant Simply Orange Juice Company is a Florida corporation with a principal place of business in Atlanta, Georgia, Fulton County

68.     Defendant is a leading seller of fruit juices under the "Simply" brand and its "Simply

Almond" product line is its first extension into the milk-alternative category.

69.     The Product is sold at tens of thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

70.     The Product is sold in sizes including 46 OZ.

71.     Plaintiff purchased the Product on at least one occasion within the statutes of limitations for each cause of action, during late September and/or early October 2020, at stores including ShopRite, 384 Windsor Hwy New Windsor NY 12553-7988.

72.     Plaintiff bought the Product because she expected it would have more of the named ingredient, vanilla, than it did, and not contain artificial flavoring.

73.     The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading representations and omissions.

74.     Plaintiff paid more for the Product than she would have paid otherwise.

75.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

<u>Class Allegations</u>

76.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

77.     Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

78.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

79.     Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

80.   Plaintiff is an adequate representative because her interests do not conflict with other members.

81.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

82.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

83.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

84.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

85.   Plaintiff incorporates by reference all preceding paragraphs.

86.   Plaintiff and class members desired to purchase a product which contained a non-negligible amount of extracts from vanilla beans and did not contain artificial flavor.

87.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

88.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

89.   Plaintiff relied on the representations.

90.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

91.    The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a non-negligible amount of extracts from vanilla beans and did not contain artificial flavor.

92.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

93.    This duty is based on Defendant's outsized role in the market for this type of Product.

94.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

95.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices since the Product has been sold.

96.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

97.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

98.    Defendant had a duty to truthfully represent the Product, which it breached.

99.    This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area.

100.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

101.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

102.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

103.   Defendant misrepresented and/or omitted the attributes and qualities of the Product.

104.   Defendant's fraudulent intent is evinced by its knowledge of the relevant regulations, as its misleading representations are careful to avoid glaringly prohibited statements but are still misleading.

<u>Unjust Enrichment</u>

105.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and

interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 3, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com